Jonathan A. Dessaules, State Bar No. 019439
Rachel W. Maron, State Bar No. 016080
**DESSAULES LAW GROUP**
5353 North 16th Street, Suite 110
Phoenix, Arizona 85016
602.274.5400 tel.
602.274.5401 fax
jdessaules@dessauleslaw.com
rmaron@dessauleslaw.com

*Attorneys for Defendant Debra Thomas*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Samuel Quinn Pittman and Theresa Rose Pittman, husband and wife,<br><br>            Plaintiffs,<br><br>     vs.<br><br>Debra Thomas, a single woman, and John Doe, a single man,<br><br>            Defendants. | No. 2:14-cv-00566-SRB<br><br>**MOTION TO SET ASIDE DEFAULT JUDGMENT** |

## MOTION

Defendant Debra Thomas ("Defendant"), by and through undersigned counsel, hereby moves to set aside entry of default as well as any default judgment entered in this matter for the reasons set forth herein. The following Memorandum of Points and Authorities, the Declaration of Debra Thomas, and the entire record supports this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs seek to make Defendant pay for damages Plaintiff Samuel Quinn Pittman ("Pittman") suffered when he was assaulted by Defendant's then 17-year old son. Plaintiffs filed their Complaint against Defendant on March 19, 2014 and their First Amended Complaint (the "FAC" or "complaint") followed on March 28, 2014. Plaintiffs claim to have served Defendant

on July 13, 2014, however, as explained in more detail below, Defendant was never properly served in accordance with the applicable rule. Defendant failed to file a timely response to the complaint, largely due to her inexperience with the legal process and her confusion regarding the significance of the documents. Coincidentally, the same day Defendant received a copy of Plaintiffs' Motion for Entry of Default, Defendant retained the undersigned Arizona legal counsel and now files this Motion just three business days later. Based on the relevant facts as well as Federal and Arizona case law, setting aside the entry of default in this case is appropriate.

**ARGUMENT**

## I.      THE STANDARD FOR SETTING ASIDE ENTRY OF DEFAULT UNDER RULE 55(c), FED. R. CIV. P.

The Ninth Circuit has long believed that motions to set aside default should be liberally granted.[1] "[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits."[2] The decision to set aside an entry of default rests in the Court's discretion, and that discretion is "especially broad where, as here, it is entry of default that is being set aside, rather than a default judgment."[3] Courts have rejected a strict rule that would prevent parties from correcting technical mistakes, such as the failure to timely respond to a complaint, "in favor of a more flexible analysis of equitable considerations."[4]

---

[1] *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984).

[2] *Id.*

[3] *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945 (9th Cir. 1986) (citation omitted). *See also, Brady v. U.S.*, 211 F.3d 499, 504 (9th Cir. 2000).

[4] *FOC Financial Ltd. Partnership v. National City Commercial Capital Corp.*, 612 F. Supp. 2d 1080, 1083 (D. Ariz. 2009) (*citing Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004) (*en banc*)).

Under Rule 55(c), Fed. R. Civ. P., courts may set aside entry of default "for good cause." In so doing, the Court should consider three factors: "(1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; and (3) whether reopening the default judgment would prejudice the other party."[5] "Where timely relief is sought from a default and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default so that cases may be decided on their merits."[6] All of the factors support vacating the entry of default here.

## II.     GOOD CAUSE EXISTS TO SET ASIDE THE ENTRY OF DEFAULT.

### A.     Defendant was Not Properly Served With the Summons and Complaint.

Proper service of process (or waiver of service) is a prerequisite to the Court's exercise of personal jurisdiction over a defendant. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend."[7] As a result, good cause exists to set aside entry of default when the defendant pleads a failure to effect proper service.[8]

Under Rule 4(e), Fed. R. Civ. P., an individual may be served by (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

---

[5] *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010).

[6] *Mendoza, supra.* (internal ellipses and brackets omitted) (citation omitted). *See also, In re Hammer*, 940 F.2d 524, 525 (9th Cir. 1991) (*citing Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985));

[7] *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999).

[8] *Reading v. U.S.*, 506 F. Supp. 2d 13, 17 (D.D.C. 2007) (citation omitted).

3

According to the Proof of Service Plaintiffs filed in this case, the summons was purportedly served by leaving it at Defendant's "residence or usual place of abode with Robert Johnson, a person of suitable age and discretion who resides there." The process server's affidavit further claims that Robert Johnson is "designated by law to accept service on behalf of [name of organization left blank]."[9] For several reasons, this does not constitute proper service of process.

First, to serve someone by leaving documents at their home, the documents must be left with an adult who actually lives there. Johnson does not live at Defendant's house.[10] On the day Plaintiffs claim Defendant was served, Mr. Johnson happened to be there working outside on the windows.[11] He told Defendant that a car with two women and a young child pulled up. One of the women got out and handed him a document with instructions to give it to Defendant.[12]

Second, Mr. Johnson was not "designated by law to accept service of process," as the Proof of Service incorrectly represents.[13] The only thing he was "designated" to do was work on Defendant's windows. In any event, this portion of the form is completely irrelevant here, as it relates to service upon an organization through its designated agent, which obviously does not apply.

Inconsistencies in the record raise additional issues regarding the facts of service. For example, on July 16, 2014, Plaintiffs filed a Motion to Extend Time for Service of Process in which they stated that as of July 15, 2014, the process server had been unable to effect service

---

[9] Proof of Service, filed August 6, 2014 (attached as Exhibit A). Curiously, the Proof of Service states that only the summons was served. It also does not indicate the exact address where service purportedly took place.

[10] Declaration of Debra Thomas ("Thomas Dec."), ¶ 6 (attached as Exhibit B).

[11] *Id.*, ¶ 3.

[12] *Id.*, ¶ 4.

[13] *Id.*, ¶ 5.

4

on Defendant. Plaintiffs requested an additional 30 days.[14] However, the process server's signed affidavit states that service was purportedly accomplished on July 13, 2014—three days days *before* Plaintiff's request. This leads to even more questions regarding the already dubious nature of the "service" Plaintiffs claim took place.

By all indications, Plaintiffs failed to serve Defendant with the summons and complaint in any manner contemplated under Rule 4(e). They did not serve Defendant personally and they did not serve someone who lives with Defendant or was otherwise authorized to accept service on her behalf. Under the circumstances, the failure to properly effectuate service constitutes good cause to set aside the default and any default judgment that may be entered. As a result, the entry of default is void and must be set aside.[15]

## B.    The Default is Not the Result of Culpable Conduct.

For purposes of Rule 55(c), "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer."[16] This consists of more than simply making a conscious decision not to answer. "[T]o treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process."[17] The Ninth Circuit has "typically held that a defendant's conduct was culpable for purposes of the good cause factors when there is no explanation of the default

---

[14] Motion to Extend Time for Service of Process, filed July 16, 2014.

[15] *Insituform Tech., Inc. v. AMerik Supplies, Inc.*, 588 F. Supp. 2d 1349 (N.D. Ga. 2008).

[16] *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis in original) (*overruled on other grounds by Egelhoff v. Egelhoff ex. rel. Breiner*, 532 U.S. 141 (2001)). *See also, Mesle, supra,* 615 F.3d at 1092 (culpability requires an intentional failure to respond); *Hernandez v. Arpaio*, 2006 WL 2971492 at *2  (D. Ariz.).

[17] *Mesle, supra.* (internal quotation and citation omitted).

inconsistent with a devious, deliberate, willful, or bad faith failure to respond."[18] In this case, *every* one of Defendant's explanations is inconsistent with these nefarious notions.

When Defendant received the complaint, she did not know what it was, what it meant, or what she should do with it. Having never been involved in a lawsuit before, Defendant was understandably confused.[19] She diligently sought help from attorneys in the Baltimore area, where she lives, and finally reached one who was kind enough to refer her to the undersigned Arizona law firm.[20] Defendant had just spoken with Mr. Dessaules when she received a copy of Plaintiffs' Motion for Default in the mail on August 15, 2014, and although she immediately worked out arrangements to hire his firm, default had already been entered.[21] Defendant filed this motion less than one week after engaging Arizona counsel.

This is a textbook case demonstrating a lack of the requisite culpability. There is no indication that Defendant purposefully tried to avoid the applicable rules of procedure or any legal obligations she may have. She also has not exhibited any intent to "thwart judicial proceedings or a reckless disregard for the effect of [her] conduct on judicial proceedings."[22] "Where the defaulting party and counsel have not shown disrespect for the court, or have given evidence of respect for the court's process by their haste in acting to set aside the default, the courts have been inclined towards leniency."[23]

---

[18] *Id.* (brackets in original).

[19] Thomas Dec., ¶ 7.

[20] *Id.*, ¶ 8.

[21] *Id.*, ¶ 9.

[22] *INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 399 (6th Cir. 1987).

[23] *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986).

To the extent Plaintiffs may argue that Defendant's conduct should be deemed culpable because she received actual notice of the lawsuit, they are wrong. The Ninth Circuit does not apply an "actual or constructive notice" standard to deny relief under Rule 55(c) or 60(d) (regarding default judgments) "except when the moving party is a legally sophisticated entity or individual."[24] That is not the case here.[25]

### C.      Defendant Has Meritorious Defenses to Plaintiffs' Negligence Claim.

To establish a meritorious defense in the context of setting aside a default, "the defendant must state a defense good at law which is sufficient if it contains even a hint of a suggestion which, proven at trial, would constitute a complete defense."[26]

Plaintiffs' only claim against Defendant is for negligence arising out of a March 25, 2012 incident when Defendant's son assaulted Pittman. Plaintiffs claim that "[p]arents have a duty to take steps to prevent their child from acting in a dangerous manner when the parents are aware of the child's proclivity for dangerous behavior";[27] that Defendant "was aware of [her son's] proclivity to take dangerous drugs and harm others";[28] and that Defendant "breached her duty by failing to take steps to prevent [her son] from taking dangerous drugs and harming Pittman."[29] Plaintiffs seek to hold Defendant liable for the damages allegedly caused by her son's actions.

Under Arizona law, a parental relationship by itself will not impose liability upon parents for the torts of their children.[30] "On the subject of parental liability for failure to control

---

[24] *Mesle, supra,* 615 F.3d at 1093.

[25] *See, e.g., Lowery v. Barcklay,*     (finding no culpability under "intentional culpability" standard, which applied because defendant was not a lawyer and was not represented when default was entered).

[26] *Thompson v. American Home Assur. Co.,* 95 F.3d 429, 434 (6th Cir. 1996).

[27] First Amended Complaint ("FAC"), ¶ 21.

[28] FAC, ¶ 22.

[29] *Id.,* ¶ 23.

[30] *Parsons v. Smithey*, 109 Ariz. 49, 51, 504 P.2d 1272, 1274 (1973).

children, it appears that the parents must have knowledge of the child's habitual conduct manifested by evidence of prior acts which are the same or similar to the act complained of."[31] Thus, absent proof that Defendant knew or should have known that her son had a propensity to take "dangerous drugs" and behave violently, Defendant cannot liable for Plaintiffs' damages.[32]

          1.     The complaint fails to state a claim upon which relief may be granted.

As an initial defense, Plaintiffs' complaint fails to state a claim for parental negligence and, therefore, should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P. On its face, the complaint negates the existence of any duty on the part of Defendant by admitting that (a) Defendant did not have physical custody of her son or the ability to control his actions at the time of the assault in March 2012;[33] and (b) her son did not become "a habitual user of dangerous drugs" until after he left Defendant's home in Maryland and moved to Arizona.[34] And although Plaintiffs appear to be alleging that Defendant should have known about her son's "proclivity for dangerous behavior" based on a similar assault he allegedly committed in Arizona in January 2012, they do not explain how Defendant would have known about that event since she lived thousands of miles away.[35] In fact, Defendant was *not* aware of the January 2012 accusation until she read about it in the complaint.[36] Having failed to state a claim upon which relief may be granted, the complaint should be dismissed with respect to Defendant.[37]

---

[31] *Id.*, 109 Ariz. at 53, 504 P.2d at 1276.

[32] *Id.*, 109 Ariz. at 52, 504 P.2d at 1275 (finding insufficient evidence that parents knew or should have known of child's propensity to harm others).

[33] FAC, ¶ 14.

[34] *Id.*, ¶ 15.

[35] *Id.*, ¶¶ 17, 18.

[36] Thomas Dec, ¶ 18.

[37] Defendant intends to file a motion to dismiss separately.

2.      The evidence does not support liability.

Even if Plaintiffs are allowed to proceed with this action, their allegations are without any factual merit. When he lived under her roof, Defendant's son was not doing drugs.[38] After he left home, Defendant rarely spoke to her son. When they did speak, it sounded like he was on a good path. He had told her he was interested in gaming engineering and planned to apply to Arizona State University.[39] Defendant also had no reason to believe her son was allegedly prone to aggressive or violent behavior. On the contrary, he was rather docile when he lived with his mother.[40] Defendant was shocked to hear that he was arrested for assault and involved with drugs, as the son she knew was nothing like that.[41]

Consistent with Arizona law regarding parental negligence as set forth above, Plaintiffs cannot establish that Defendant had a duty to take steps to prevent Pittman's assault or that she breached any such duty if one did somehow exist. She had no reason to know about, let alone try to control, her son's alleged "proclivity" towards violent conduct. As far as Defendant was concerned, her son was doing well. Thus, Defendant is not legally responsible for her son's actions.

**D.      Reopening the Case Will Not Prejudice Plaintiffs.**

To be prejudicial, setting aside the entry of default "must result in greater harm than simply delaying resolution of the case."[42] Rather, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or

---

[38] Thomas Dec., ¶ 14.

[39] *Id.*, ¶ 18.

[40] *Id.*, ¶ 12.

[41] *Id.*, ¶ 16.

[42] *TCI Group Life Ins. Plan*, *supra,* 244 F.3d at 701.

collusion."[43] The applicable standard is "whether [plaintiffs'] ability to pursue [their] claim will be hindered."[44] There is no indication of this sort of prejudice in this case.

Defendant's deadline to respond to the complaint was August 4, 2014—less than two before the date of this Motion. Plaintiffs filed their initial complaint on March 19, 2014 and their First Amended Complaint on March 28, 2014. Having already waited approximately four months to serve Defendant, an additional few weeks can hardly be considered prejudice.[45]  This is especially true since default judgment has not yet been entered. "[B]eing forced to litigate on the merits is not prejudicial for purposes of setting aside the entry of default," and that is the only consequence to Plaintiffs if the Court grants this Motion.[46]

CONCLUSION

Justice demands that the entry of default be set aside because Defendant was never properly served with the complaint, her failure to respond was not due to any culpable conduct, she clearly has meritorious defenses to Plaintiffs' claim, and vacating the default will not prejudice Plaintiffs. Considering these factors along with the public policy favoring resolutions of legal disputes on their merits rather than on technicalities, the Court should grant this Motion and reinstate the case.

---

[43] *Id.*, (*quoting Thompson, supra,* 95 F.3d 429, 433-34).

[44] *Falk, supra,* 739 F.2d at 463.

[45] Defendants claim they had difficulty locating Defendant, however this is difficult to believe. Defendant does not live in secrecy and, having no knowledge of this lawsuit, certainly was not evading service.

[46] *Hernandez, supra,* 2006 WL 2971492 at *2  (*quoting TCI Group Life Ins. Plan*, *supra,* 244 F.3d at 701).

10

DATED this 19th day of August 2014.

DESSAULES LAW GROUP


By:   /s/ Rachel W. Maron
        Jonathan A. Dessaules
        Rachel W. Maron
        *Attorneys for Defendant Debra Thomas*

# CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2014 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Samuel Q. Pittman
Theresa R. Pittman
1930 W. Decatur St.
Mesa, AZ 85201
Samuelqpittman@gmail.com
*Plaintiffs Pro Se*


/s/ Hilary L. Peters